Swartz Swidler, LLC
Richard S. Swartz, Esq. (NJ #026801997)
Justin L. Swidler, Esq. (NJ #039312007)
Joshua S. Boyette, Esq. (NJ #043862010)
Travis Martindale-Jarvis, Esq. (NJ #122862014)
1101 Kings Hwy N., Suite 402
Cherry Hill, NJ  08034
Phone: (856) 685-7420

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| **LEE VASQUEZ** *individually and on behalf of all those similarly situated,*<br><br>**Plaintiffs,**<br>vs.<br><br>**P.A.M. TRANSPORT, INC.**<br>297 West Henri de Tonti Blvd.<br>Tontitown, AR 72770<br><br>**and**<br><br>**JOHN DOES 1-10**<br>c/o P.A.M. TRANSPORT, INC.<br>297 West Henri de Tonti Blvd.<br>Tontitown, AR 72770<br><br>**Defendants.** | **COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

---

### INDIVIDUAL, COLLECTIVE, AND CLASS ACTION COMPLAINT

1.     Plaintiffs Lee Vasquez ("Named Plaintiff Vasquez"), individually and on behalf of herself and those similarly situated ("Collective Action Plaintiffs" under the FLSA; "Class Plaintiffs" under state law), by and through undersigned counsel, hereby complain as follows against Defendants P.A.M. Transport, Inc. ("Defendant PAM") and John Does 1-10 (collectively referred to as "Defendants").

1

## INTRODUCTION

2.      Named Plaintiff initiates the instant action to redress violations by Defendants of the Fair Labor Standards Act ("FLSA"), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Electronic Funds Transfer Act ("EFTA"),  and the wage and hour laws of the state of Arkansas (as specified herein).  As stated herein, Defendant PAM is a nationwide transportation carrier which provides over-the-road transportation of freight to its customers.  During the relevant time period, Defendant PAM has employed thousands of commercial truck drivers, including Named Plaintiff.  Defendant PAM systematically and intentionally compensates its drivers below the federal and state minimum wage for all hours worked.  Additionally, Defendant PAM subjects its drivers to unlawful wage deduction and payment policies, whereby Defendant PAM unlawfully retains some or all of the earned wages of Named Plaintiff and those similarly situated each workweek. Defendant PAM further charges unlawful and usurious interest rates for employee loans, which are facilitated through Defendant PAM's agreements with COMDATA. After each such loan is made, Defendant PAM unlawfully deducts the loans, including the usurious interest charged, from the earned wages of Named Plaintiff and those similarly situated, in violation of RICO and state law. Finally, Defendant PAM conditioned the payment of such advances on the right to electronically access and debit from the escrow deferred compensation accounts Defendant PAM required the Named Plaintiff and similarly situated drivers to maintain, in violation of the EFTA. As a result of Defendants' unlawful actions, Named Plaintiff and those similarly situated have been harmed.

3.      Named Plaintiff seeks the maximum recovery for her and the class permitted under the law.  Nevertheless, the instant action and the following allegations and claims do not seek damages for any claim released pursuant to the Court-approved settlement in *David Browne, et al.*

2

*v. P.A.M. Transport, Inc., et al.,* Civil Action No. 5:16-cv-05366. *See* Opinion and Order Granting Final Approval, Civ. Act. No. 5:16-cv-05336, ECF Doc. No. 300  (Aug. 31, 2020). settlement, available at Civ. Act. No. 5:16-cv-05336, ECF Doc. No. 279-1 (the "*Browne* Settlement").

## JURISDICTION AND VENUE

4.     This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiffs' federal claims because this civil action arises under a law of the United States and seeks redress for violations of a federal law, 29 U.S.C. § 201 *et seq*. and 18 U.S.C. § 1962, *et al.*  This Court has supplemental jurisdiction over related state law claims because such claims arise out of the same circumstance and are based upon a common nucleus of operative fact.

5.     This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice. Specifically, Defendant PAM is headquartered in this judicial district.

6.     Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this judicial district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district and Defendants are deemed to reside where it is subject to personal jurisdiction, rendering Defendants residents of this judicial district.

## PARTIES

7.     The foregoing paragraphs are incorporated herein as if set forth in full.

8.     Named Plaintiff Lee Vasquez is an adult individual residing at 6262 Brassie Drive, North Carolina, 28530.

9.     Defendant PAM is an Arkansas Corporation that maintains a business address as set forth in the caption.

3

10.     Defendants John Doe 1 through John Doe 5 are presently unknown persons who, directly or indirectly, directed, aided, abetted, and/or assisted with creating and/or executing the policies and practices of Defendant PAM which resulted in Defendant PAM failing to pay Plaintiffs proper compensation pursuant to the FLSA and the Arkansas Minimum Wage Law.

11.     Defendants John Doe 6 through John Doe 10 are presently unknown persons who had control over processing payroll regarding Plaintiffs.

12.     At all times relevant herein, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant PAM.

## COLLECTIVE ACTION ALLEGATIONS

13.     The foregoing paragraphs are incorporated herein as if set forth in their entirety.

14.     Named Plaintiff brings this action for violations of the FLSA as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of Collective Action Plaintiffs.

15.     Specifically, Named Plaintiff seeks to represent a company-wide collective of all persons who worked or work for Defendant PAM as over-the-road truck drivers and who were/are subject to Defendant PAM's unlawful pay practices and policies described herein at any point from January 1, 2020 to the present (members of this putative class are referred to herein as "Collective Action Plaintiffs").

16.     On August 31, 2020, the United States District Court of the Western District of Arkansas granted final approval of the *Browne* Settlement. The instant collective action and following collective action allegations do not seek damages for matters released by the *Browne* Settlement.  Named Plaintiff does not seek to include in the FLSA collective individuals whose

4

FLSA claims have been fully resolved by virtue of the *Browne* Settlement.   Moreover, consistent with the *Browne* Settlement, Named Plaintiff does not seek damages for any collective member under the FLSA for FLSA claims that were incurred prior to January 1, 2020.

17.   Named Plaintiff's claims are typical of the claims of Collective Action Plaintiffs, because Named Plaintiff, like all Collective Action Plaintiffs, was an employee of Defendant PAM whom Defendant PAM failed to pay minimum wage as required by the FLSA from January 1, 2020 to the present.

18.   Named Plaintiff will fairly and adequately protect the interests of Collective Action Plaintiffs, because Named Plaintiff's interests are coincident with, and not antagonistic to, those of the class.   Named Plaintiff has retained counsel with substantial experience in the prosecution of claims involving employee wage disputes.

19.   No difficulties are likely to be encountered in the management of this collective action that would preclude its maintenance as a collective action.   The class will be easily identifiable from Defendant PAM's records.

20.   Similarly situated employees are known to Defendant PAM, are readily identifiable by Defendant PAM, and can be located through Defendant PAM's records. Named Plaintiff does not know the exact size of the potential class, as such information is in the exclusive control of Defendant PAM; however, on information and belief, the number of potential class members is estimated to be in the thousands.

21.   Questions of law and fact that are common to the members of the class predominate over questions that affect only individual members of the class.   Among the questions of law and fact that are common to the class is whether Defendant PAM:  (1)  failed to compensate its drivers at least the federal minimum wage for all compensable time worked while driving over-the-road;

5

(2) failed to compensate its drivers at least the federal minimum wage for all compensable time worked when on assignment for more than 24 hours; (3) failed to compensate its drivers at least the federal minimum wage for all compensable time worked when on assignment for less than 24 hours; (4) failed to compensate its drivers at least the federal minimum wage for all compensable time, due to unlawful deductions made from drivers' pay; and (5) failed to compensate its drivers at least the federal minimum wage for all compensable time, due to unlawful deductions made pursuant to Defendant PAM's deductions policies;

22.     Therefore, Named Plaintiff should be permitted to bring this action as a collective action for and on behalf of herself and those employees similarly situated, pursuant to the "opt-in" provisions of the FLSA, 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

23.     The foregoing paragraphs are incorporated herein as if set forth in their entirety.

24.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure and the Class Action Fairness Act of 2005, Named Plaintiff brings her claims for relief under the Arkansas Minimum Wage Act, the Arkansas Wage Payment Law, Arkansas common law, the federal Electronic Funds Transfer Act, and the Racketeer Influenced and Corrupt Organizations Act, on behalf of herself and those similarly situated.

25.     Specifically, Named Plaintiff seeks to represent a class of all persons who worked or work for Defendants as over-the-road truck drivers.

26.     On August 31, 2020, the United States District Court of the Western District of Arkansas granted final approval of the *Browne* Settlement. The instant class action and following class action allegations do not seek damages for matters released by the *Browne* Settlement.

Named Plaintiff does not seek to include in the Rule 23 class/sub-classes individuals whose claims in this proposed class action were fully resolved by virtue of the *Browne* Settlement.

27.     The class is so numerous that the joinder of all class members is impracticable. Named Plaintiff does not know the exact size of the class, as such information is in the exclusive control of Defendants; however, on information and belief, the number of potential class members is estimated to be in the thousands.

28.     Named Plaintiff's claims are typical of the claims of the putative class members, because Named Plaintiff, like all Class Plaintiffs, was an employee of Defendants in Arkansas who was denied minimum wage for certain compensable hours worked, was subject to unlawful deductions from her pay, and was subjected to usurious and otherwise unlawful loans/advances against her future her wages and was charged unlawful and usurious interest on those loans.

29.     Named Plaintiff will fairly and adequately protect the interests of the putative class because Named Plaintiff's interests are coincident with, and not antagonistic to, those of the class. Named Plaintiff has retained counsel with substantial experience in the prosecution of claims involving employee wage disputes.

30.     No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action.  The class will be easily identifiable from Defendants' records.

31.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Such treatment will allow all similarly situated individuals to prosecute their common claims in a single forum simultaneously.  Prosecution of separate actions by individual members of the putative class would create the risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible

7

standards of conduct for Defendants.  Furthermore, the amount at stake for individual putative class members may not be great enough to enable all of the individual putative class members to maintain separate actions against Defendants.

32.     Questions of law and fact that are common to the members of the class predominate over questions that affect only individual members of the class.  Among the questions of law and fact that are common to the class is whether Defendant PAM:  (1) failed to compensate its drivers at least the Arkansas minimum wage for all compensable time worked; (2) failed to compensate its drivers at least the Arkansas minimum wage for all compensable time, due to unlawful deductions it made from the employees' wages; (3) failed to pay drivers in currency in violation of Arkansas law; (4) provided drivers with loans/advances at unlawful usurious interest rates; (5) received money from drivers through the collection of an unlawful debt and used such money in the operation of an enterprise engaged in interstate commerce in violation of 18 U.S.C. § 1962(a); and (6) conditioned the extension of credit on the right to make automatic electronic deductions from the class members' escrow accounts in violation of 18 U.S.C. § 1693k.

33.     Class Action Plaintiffs should be broken into subclasses consisting of the following (most class members will be members of multiple subclasses and many will be members of all subclasses):

a.     <u>Unpaid Minimum Wage Plaintiffs</u>: Members of this subclass consist of all drivers who worked for Defendants, and are similarly situated because Defendant's driver compensation system failed to track compensable work time, failed to pay drivers the Arkansas minimum wage for all compensable hours worked, and subjected the drivers' to unlawful deductions from their wages which brought their wages below the Arkansas minimum wage.

b.     <u>Separation Wages Plaintiffs</u>: Members of this subclass consist of all drivers

8

who worked for Defendants and who have terminated their employment, and are similarly situated because Defendant's failure to pay all wages due upon separation as required by Arkansas law in violation of Ark. Code § 11-4-405(b).

          c.    <u>Advance Plaintiffs</u>: Members of this subclass consist of all drivers who worked for Defendants and who received advances from Defendants and were charged fees that amount to more than 10% per annum, and are similarly situated because Defendant charged usurious advance fees/interest in violation of Ark. Code § 11-4-402(a) and RICO, and required as a condition of the granting of such advances the ability to automatically electronically transfer funds from the drivers' escrow accounts for the reimbursement of such advances in violation of the EFTA.

34.     Therefore, Named Plaintiff should be should be permitted to bring this action as a class action for and on behalf of themselves and those employees similarly situated, pursuant to Federal Rule of Civil Procedure 23.

## FACTUAL BACKGROUND

35.     The foregoing paragraphs are incorporated herein as if set forth in full.

36.     Upon information and belief, Defendants have maintained the unlawful pay system described herein since at least January 1, 2020.

37.     Plaintiffs were subjected to an unlawful compensation system to which Defendants subjected all of their over-the-road drivers as described herein.

38.     All over-the-road truck drivers employed by Defendants are deemed to be employed in Arkansas because all such drivers: (1) had their employment application processed in Arkansas; (2) reported to management located in Arkansas; (3) reported their hours worked via Defendants' Qualcomm system to Defendants' headquarters in Arkansas; (4) had their pay

9

calculated by Defendants' headquarters in Arkansas; and (5) received their pay from Defendants' accounts in Arkansas.  Moreover, all decisions regarding the drivers' employment, including hiring, driving assignments, and termination, were made in Arkansas.

39.     Plaintiffs were all over-the-road truck drivers employed by Defendant PAM and were all subjected to the policies discussed herein at some point within the time period of January 1, 2020 to the present.

40.     Named Plaintiff Vasquez was employed by Defendant PAM as an over-the-road truck driver from in or around October 2019 to in or around March of 2020.

## FAILURE TO PAY MINIMUM WAGE TO DRIVERS

41.     The foregoing paragraphs are incorporated herein as if set forth in full.

42.     Minimum Wage Plaintiffs, including Named Plaintiff Vasquez, were provided a truck and were paid either a flat salary for all work performed or a per-mileage rate for each mile driven.

43.     Defendant did not record or maintain records providing the working hours Plaintiff Vasquez or other drivers worked.

44.     Instead, Defendant required Named Plaintiff and other drivers to submit their DOT duty statuses for each hour while the driver was over-the-road on assignment over Defendant's Qualcomm system.

45.     Messages received and sent to drivers through the Qualcomm system, including DOT duty status messages, are received by Defendant PAM in a single centralized location in Arkansas.

46.     Named Plaintiff Vasquez and Minimum Wage Plaintiffs were required to remain over-the-road in or in the general proximity of their assigned truck for more than 24 consecutive hours during multi-day and multi-week tours of duty.

47.     While driving over-the-road for Defendant PAM, Named Plaintiff Vasquez and Minimum Wage Plaintiffs were required to, among other things: (1) drive the truck; (2) if riding with a team driver, remain in the truck while the truck was moving so that they could assist in transporting the cargo; (3) wait for cargo to be loaded or unloaded at shippers and receivers while staying in the truck or staying in the truck's immediate vicinity; (4) fuel the truck and perform routine maintenance to same; (5) remain in the vicinity of the truck to help protect Defendant PAM's truck and and its customers' property; and (6) remain inside the truck when stopped for DOT rest breaks to log time in the sleeper berth and to help protect Defendant PAM and its customer's property and to remain available to Defendant PAM.

48.     While over-the-road, Named Plaintiff Vasquez and Minimum Wage Plaintiffs were responsible for their assigned trucks for more than 24 consecutive hours.

49.     While over-the-road, Named Plaintiff Vasquez and Minimum Wage Plaintiffs were responsible for the cargo being transported in their assigned trucks for more than 24 consecutive hours.

50.     While over-the-road, Named Plaintiff Vasquez and Minimum Wage Plaintiffs were confined to the general vicinity of their assigned truck for more than 24 hours.

51.     Defendant PAM did not pay by the hour or track the number of compensable hours Named Plaintiff Vasquez and Minimum Wage Plaintiffs worked.

52.     Defendant PAM's pay system for Named Plaintiff Vasquez and Minimum Wage Plaintiffs did not include any system or process for supplementing the weekly pay by a sufficient

amount such that Defendant would pay at least the federal or Arkansas minimum wage for all hours worked per week in those circumstances where the pay from Defendant did not constitute at least the federal or Arkansas minimum wage multiplied by all compensable hours for the driver's workweek.

53.     As a result of such systemic failure of Defendant PAM's compensation system, on numerous workweeks in 2020, Defendant PAM failed to pay Named Plaintiff a weekly wage which constituted payment of at least state or federal minimum wage.

54.     Defendant was required to compensate Named Plaintiff and Minimum Wage Plaintiffs for no less than 16 hours each day while Named Plaintiff and Minimum Wage Plaintiffs were over-the-road on multi-day tours. *See* 29 C.F.R. § 785.22. AR DOL Rule No. 010.14-108(d)(3).

55.     Alternatively, to the extent that the Court and/or jury find that Named Plaintiff and Minimum Plaintiffs were not on duty for more than 24 hours, then all time Named Plaintiff and Minimum Wage Plaintiffs spent in the truck's sleeper berth while remaining with the truck were required to be compensated. *See* 29. C.F.R. § 785.21; AR DOL Rule No. 010.14-108(d)(2).

56.     Defendant PAM regularly and systematically paid less than the federal and Arkansas minimum wage for Named Plaintiff Vasquez's and Minimum Wage Plaintiffs' weekly compensable hours.

## UNLAWFUL DEDUCTIONS

57.     The foregoing paragraphs are incorporated herein as if set forth in full.

58.     Defendant PAM made deductions from Named Plaintiff Vasquez and Minimum Wage Plaintiffs' pay regardless of whether such deductions would bring their weekly wages below the minimum wage under federal and Arkansas law.

12

59.     By way of example, Defendant PAM deducted $25 per week from Named Plaintiff Vasquez and Minimum Wage Plaintiffs' pay until $500 was accumulated in an "escrow account."

60.     By way of further example, Defendant PAM also deducted $45 per week from Named Plaintiff Vasquez and Minimum Wage Plaintiffs' pay in connection with the repayment of a "loan" Defendant PAM extended to drivers to attend CDL school.

61.     These and similar deductions regularly and systematically caused Named Plaintiff Vasquez and the Minimum Wage Plaintiffs to be paid less than the minimum wage.

## FAILURE TO TENDER ALL WAGES DUE ON SEPARATION

62.     The foregoing paragraphs are incorporated herein by reference.

63.     Ark. Code § 11-4-405 provides that an employer must pay all wages due within 7 days of the termination of an employee.

64.     Defendant failed to pay all Named Plaintiff and Separation Wages Plaintiffs' wages due, including but not limited to the unpaid minimum wages due and the retained escrow funds, within 7 days of their termination of employment.

65.     As a result of Defendant's actions, Named Plaintiff and Separation Wages Plaintiffs have suffered damages.

## UNLAWFUL USURIOUS PAY ADVANCE CHARGES

66.     The foregoing paragraphs are incorporated herein by reference.

67.     Ark. Code § 11-4-402 provides that an employer may not discount the wages when payment is made or demanded before the regular paydays at a rate of more than 10% per annum from the date of payment to the regular payday and such charges are considered usurious.

68.     Under the Arkansas Constitution, usurious loans are illegal as to both the principal and interest.

13

69.     Defendant charged Named Plaintiff Vasquez and Pay Advance Plaintiffs more than 10% per annum from the date of payment to the date of the regular payday for advances.

70.     The advances with advance charges which were more than 10% per annum constitute usurious loans illegal as to both principal and interest.

71.     As a result of Defendant's actions, Named Plaintiff and Pay Advance Plaintiffs have suffered damages.

## <u>VIOLATION OF THE EFTA, 18 U.S.C. § 1693k</u>

72.     The foregoing paragraphs are incorporated herein by reference.

73.     Defendant required Plaintiffs, as a condition of receiving advances through Comdata, to allow Defendant to automatically electronically transfer funds from each driver's escrow account (which contained the driver's deferred compensation) in order to recoup such advances.

74.     The Electronic Funds Transfer Act prohibits conditioning the extension of credit on the debtor agreeing to preauthorized electronic fund transfers.

75.     As a result of Defendant's actions, Named Plaintiff and the EFTA Plaintiffs have suffered damages.

## <u>COLLECTION OF AN UNLAWFUL DEBT IN VIOLATION OF RICO</u>

76.     The foregoing paragraphs are incorporated herein by reference.

77.     18 U.S. Code § 1962(a) makes it unlawful for any entity to receive income through the collection of an unlawful debt in support of an enterprise engaged in interstate commerce.

78.     Defendant formed an association-in-fact enterprise with Comdata which has lasted for more than ten years and has the purpose of directing, controlling, and limiting the distribution of money to Defendants' over-the-road truck driver employees necessary for the drivers to deliver

14

freight for Defendant and Defendant's customers from state to state on the highways of the United States.

79.     Defendant collects illegal and usurious advance charges from Named Plaintiff and other RICO Plaintiffs, who all worked for Defendant as over-the-road truck drivers.

80.     Defendant uses the money it collects from Named Plaintiff and RICO Plaintiffs to fund and contribute to its continued operations.

81.     As a result of Defendant's actions, Named Plaintiff and RICO Plaintiffs have suffered damages.

## COUNT I
## Violations of the Fair Labor Standards Act
### (Named Plaintiff and Collective Action Plaintiffs v. Defendants)
### (Minimum Wage)

82.     The foregoing paragraphs are incorporated herein as if set forth in full.

83.     At all times relevant herein, Defendant PAM was and continues to be an "employer" within the meaning of the FLSA.

84.     At all times relevant herein, Named Plaintiff and Collective Action Plaintiffs were/are "employees" within the meaning of the FLSA.

85.     The FLSA requires employers, such as Defendant PAM, to minimally compensate employees, such as Named Plaintiff and Collective Action Plaintiffs, at the federal minimum wage rate for every compensable hour worked.

86.     As a result of Defendant PAM's company-wide practices and policies of paying its employees below the federal minimum wage for all compensable hours worked for Defendant each workweek, Named Plaintiff and Collective Action Plaintiffs have been harmed.

15

87.     As a result of Defendant PAM's company-wide practices and policies of making deductions from its employees' wages that caused the wages to fall below the federal minimum wage for all hours worked each workweek, Named Plaintiff and Collective Action Plaintiffs have been harmed.

88.     John Does 1-5 are jointly and individually liable for Defendant PAM's failure to compensate Named Plaintiff and Collective Action Plaintiffs at least the federal minimum wage for all hours worked because they directly or indirectly, directed, aided, abetted, and/or assisted with creating and/or executing the policies and practices which violated the FLSA.

89.     John Does 6-10 are jointly and individually liable for Defendant PAM's failure to compensate Named Plaintiff and Collective Action Plaintiffs at least the federal minimum wage for all hours worked because they had control over processing payroll for Named Plaintiff and Collective Action Plaintiffs.

90.     Defendant PAM willfully failed to compensate Named Plaintiff and Collective Action Plaintiffs the federal minimum wage.

91.     As a result of Defendant PAM's failure to compensate Named Plaintiff and Collective Action Plaintiffs at the federal minimum wage rate, Defendant PAM has violated and continues to violate the FLSA.

**COUNT II**
**Violations of the Arkansas Minimum Wage Law**
**(Named Plaintiff and Minimum Wage Plaintiffs v. Defendants)**
**(Minimum Wage)**

92.     The foregoing paragraphs are incorporated herein as if set forth in full.

93.     At all times relevant herein, Defendant PAM was and continues to be an "employer" within the meaning of the Arkansas Minimum Wage Law.

94.     At all times relevant herein, Named Plaintiff and Class Plaintiffs were/are "employees" within the meaning of the Arkansas Minimum Wage Law.

95.     The Arkansas Minimum Wage Law requires employers, such as Defendant PAM, to minimally compensate employees, such as Named Plaintiff and Class Plaintiffs, at the Arkansas minimum wage rate for every compensable hour worked.

96.     As a result of Defendant PAM's company-wide practices and policies of paying its employees below the Arkansas minimum wage for all compensable hours worked for Defendant each workweek, Named Plaintiff and Class Plaintiffs have been harmed.

97.     As a result of Defendant PAM's company-wide practices and policies of making deductions from its employees' wages that caused the wages to fall below the Arkansas minimum wage for all hours worked each workweek, Named Plaintiff and Collective Action Plaintiffs have been harmed.

98.     John Does 1-5 are jointly and individually liable for Defendant PAM's failure to compensate Named Plaintiff and Class Plaintiffs at least the Arkansas minimum wage for all hours worked because they directly or indirectly, directed, aided, abetted, and/or assisted with creating and/or executing the policies and practices which violated the Arkansas Minimum Wage Law.

99.     John Does 6-10 are jointly and individually liable for Defendant PAM's failure to compensate Named Plaintiff and Collective Action Plaintiffs at least the Arkansas minimum wage for all hours worked because they had control over processing payroll for Named Plaintiff and Class Plaintiffs.

100.     Defendant PAM willfully failed to compensate Named Plaintiff and Class Plaintiffs the Arkansas minimum wage.

17

101.     As a result of Defendant PAM's failure to compensate Named Plaintiff and Class Plaintiffs at the Arkansas minimum wage rate, Defendant PAM has violated and continues to violate the Arkansas Minimum Wage Law.

## COUNT III
### Violations of the Electronic Funds Transfer Act
**(Named Plaintiff and Advance Plaintiffs v. Defendants)**
**(Unlawful advances and associated charges)**

102.     Defendant required Named Plaintiff and Advance Plaintiffs to agree that Defendant could recoup these advances by automatically debiting the "escrow accounts" and/or  Comdata "accounts" of each Plaintiff and Advance Plaintiff.

103.     Under the Electronic Funds Transfer Act, 15 U.S.C. § 1693k, the extension of credit cannot be conditioned upon the preauthorization of electronic fund transfers.

104.     Named Plaintiff and Advance Plaintiffs were harmed and suffered damages as a result of Defendant's unlawful advances which violated the EFTA.

## COUNT IV
### Violations of the Arkansas Wage Payment Law
**(Named Plaintiff and Separation Wages Plaintiffs v. Defendants)**
**(Failure to Pay Full Wages on Discharge)**

105.     The foregoing paragraphs are incorporated herein as if set forth in full.

106.     At all times relevant herein, Defendant PAM was and continues to be an "employer" within the meaning of the Arkansas Wage Payment Law, Ar. Code § 11-4-405(a)(1) & 405(b).

107.     At all times relevant herein, Named Plaintiff and Separation Wages Plaintiffs were/are "employees" within the meaning of the Arkansas Wage Payment Law, Ar. Code § 11-4-405(a)(1) & 405(b).

108.    Arkansas Wage Payment Law, Ar. Code § 11-4-405(a)(1) & 405(b) requires that all wages be paid upon discharge without deductions and within 7 days of discharge.

109.    Defendant PAM deducts money from Named Plaintiff and Separation Wages Plaintiffs wages upon the discharge of an employee for the following reasons:

     a.  "PAM fails to receive all of [the driver's] trip envelopes and bills of ladings[;]

     b.  PAM incurs any expenses as a result of [the driver's] termination including, but not limited to, out of route miles, towing, truck chasing for abandoned vehicle[;]

     c.  There is damage to the vehicle or cargo[;]

     d.  [The driver] fail[s] to meet [his or her] contract of employment commitment of one year.

     e.  Any other reasonable expense incurred by PAM as a result of [the diver's] employment or termination."

110.    None of the above deductions are permitted to be taken from wages at time of discharge under Ark. Code § 11-4-405(b).

111.    Defendant PAM deducted money throughout the course of Named Plaintiff' and Separation Wages Plaintiffs' employment and held this money in an escrow account for Named Plaintiff and Separation Wages Plaintiffs.

112.    Upon the termination of Named Plaintiff and Separation Wages Plaintiffs, Defendant PAM fails to pay the amount in the escrow account back to Named Plaintiff and Class Plaintiffs within 7 days.

113.    Moreover, Defendant PAM never pays Named Plaintiff and Separation Wages Plaintiffs the amounts which Defendant unlawfully deducted.

114.    Moreover, Defendant PAM never pays Named Plaintiff and Separation Wages Plaintiffs the unpaid minimum wages owed.

115.    By failing to pay all wages due within 7 days of discharge, Defendant PAM has and continues to violate Ar. Code § 11-4-405(b).

116.    Named Plaintiff and Class Plaintiffs have suffered harm as a result of Defendant PAM's unlawful deductions policy.

**COUNT V**
**<u>Violations of the Arkansas Wage Payment Law</u>**
**(Named Plaintiff and Advance Plaintiffs v. Defendants)**
**(Charging Unlawful and Usurious Advance Fees)**

117.    The foregoing paragraphs are incorporated herein as if set forth in full.

118.    Unde Ark. Code § 11-4-402(a), an employer may not discount the wages of their employees when payment is made or demanded before the regular paydays more than at the rate of ten percent (10%) per annum from the date of payment to the regular payday.

119.    Defendant charged Named Plaintiff and Pay Advance Plaintiffs advance fees for its advances whose rates were well in excess of the ten percent (10%) per annum maximum rate allowed under the Arkansas Wage Payment Law.

120.    The Arkansas Wage Payment Law further makes clear that violations of the advance rate constitute usury.

121.    Under the Arkansas Constitution, such usurious contracts are unlawful as to both the principle and the interest.

122.    Accordingly, Defendant's collection of this usurious unlawful debt was a violation of the Arkansas Wage Payment Law and the Arkansas Constitution.

20

**COUNT VI**
**Violations of the Arkansas Common Law**
**(Named Plaintiff Vasquez and Deduction Plaintiffs v. Defendant PAM)**
**(Unjust Enrichment)**

123.    The foregoing paragraphs are incorporated herein as if set forth in full.

124.    Defendant PAM made deductions from Named Plaintiff Vasquez and Deduction Plaintiffs' wages throughout the course of their employment and alleged that these deductions were being placed in an escrow account to cover final pay deductions at time of discharge.

125.    The purported agreement between Defendant PAM and the Deduction Plaintiffs that PAM could make such deductions was an unlawful contract under Ark. Code § 11-4-405(b).

126.    Defendant PAM increased its profits to the detriment of Named Plaintiff Vasquez and Deduction Plaintiffs by making the final pay deductions at time of discharge.

127.    Named Plaintiff Vasquez and Deduction Plaintiffs were harmed as a result of Defendant's actions and are entitled to restitution damages in the amount that Defendant PAM was unjustly enriched.

**COUNT VIII**
**Violations of the Racketeer Influenced and Corrupt Organizations Act**
**(Named Plaintiff and Advance Plaintiffs v. Defendant PAM)**
**(18 U.S.C. § 1962, *et al.*)**

128.    The foregoing paragraphs are incorporated herein as if set forth in full.

129.    Defendant PAM was engaged in an enterprise with Comdata to control and limit the distribution of money to its employee drivers which the employees needed to (a) get paid and (b) pay for fuel and other business and living expenses while over-the-road, in furtherance of the delivery of Defendant's freight for Defendant's customers across state lines and through the use of the highways of the United States.

21

130.    Defendant PAM collected unlawful and usurious debts through the Comdata Cards and "accounts" issued to drivers, including from Named Plaintiff Vasquez and the Advance Plaintiffs.

131.    Defendant PAM's conduct constituted a violation of RICO.

132.    Named Plaintiff and Advance Plaintiffs were harmed as a result of Defendant's actions.

**WHEREFORE**, Plaintiffs pray that this Court enter an Order:

1) Certifying the instant action as a "collective action" pursuant to the Fair Labor Standards Act;

2) Certifying the instant action as a "class action" pursuant to Federal Rule of Civil Procedure 23;

3) Enjoining Defendant PAM from continuing to maintain its illegal policy, practice, or customs in violation of federal and state law;

4) Providing that Defendant PAM is to compensate, reimburse, and make Plaintiffs whole for any and all pay and benefits they would have received had it not been for Defendant PAM's illegal actions, including but not limited to past lost earnings.

5) Awarding Plaintiffs liquidated, treble, statutory, and/or enhanced damages pursuant to the applicable laws they are suing under;

6) Awarding Plaintiffs the costs and expenses of this action and reasonable legal fees as provided by applicable law; and

7) Awarding Plaintiffs all other relief as the Court deems appropriate and just.

Respectfully submitted,

*/s Justin L. Swidler*
Justin L. Swidler, Esq.
Richard S, Swartz, Esq.
Joshua S. Boyette, Esq.
**SWARTZ SWIDLER, LLC**
1101 Kings Hwy N., Suite 402
Cherry Hill, NJ 08034
Phone: (856) 685-7420
Fax: (856) 685-7417

Dated:  August 5, 2021

23