# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| **LEE VASQUEZ,** *on behalf of herself and all those similarly situated*, <br><br> **Plaintiffs,** <br> v. <br><br> **P.A.M. TRANSPORT, INC.,** *et al.*, <br><br> **Defendants.** | **Case No. 5:21-CV-05143-PKH** |

## PLAINTIFF'S BRIEF IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

Justin L. Swidler, Esq .
Josh S. Boyette, Esq.
Richard S. Swartz, Esq.
**SWARTZ SWIDLER, LLC**
9 Tanner Street, Ste. 101
Haddonfield, NJ 08033
Phone: (856) 685-7420

i

## TABLE OF CONTENTS

Table of Contents

I.    Introduction ......................................................................................................... 1

II.   LEGAL ARGUMENT ........................................................................................ 4

   A.    Preliminary Approval is Appropriate. ............................................................ 4

   B.    The Settlement Falls within the Range of Possible Approval. ........................ 6

   C.    The Settlement Notice is Proper. ................................................................... 9

   D.    The Court Should Approve the Settlement of Plaintiff's Arkansas State Law Claims
   Under Fed. R. Civ. P. 23 Because It is Fair, Reasonable, and Adequate. ................................ 10

      1.    The Merits of Plaintiff's Claims and the Legal and Factual Complexity of the Claims
      (Factors 1 and 3). ............................................................................................. 11

      2.    The Defendant's Financial Condition (Factor 2). ....................................... 12

   E.    Provisional Certification of the Rule 23 Classes for Settlement Purposes Only is
   Appropriate. ......................................................................................................... 12

      1.    The class satisfies each prerequisite for certification under Rule 23(a) and Rule
      23(b)(3). ......................................................................................................... 14

      2.    The members of the class are sufficiently numerous that joinder is impracticable.... 14

      3.    There are questions of law and fact common to the members of the class and these
      facts predominate over individual issues. ............................................................... 15

      4.    Plaintiff's claims are typical of the claims of the class. ............................... 17

      5.    Plaintiff's Counsel and Plaintiff are adequate to protect the class; Plaintiff's Counsel
      should be appointed Class Counsel. ......................................................................... 18

      6.    A class is superior to other available methods of resolving this dispute. ................... 20

   F.    The Court Should Approve the Settlement of Plaintiff's FLSA Claims Because the
   Settlement is Fair and Reasonable. ........................................................................ 21

      1.    The settlement is not fraudulent or collusive. ........................................... 22

      2.    The Settlement appropriately factored in the complexity, risk, expense, and likely
      duration of the trial and appeal. ........................................................................... 22

      3.    The stage of the proceedings. ...................................... **Error! Bookmark not defined.**

      4.    The strength of the plaintiff's case and the probability of plaintiff's success on the
      merits. ........................................................................................................... 24

      5.    The Settlement covers the range of possible recovery. ............................. 24

      6.    The opinions of Counsel. ......................................................................... 25

G.     The Court should preliminarily approve the Attorneys' Fees, Costs, Service Award, and Administrative Costs.................................................................................................... 25

    1.    The requested attorney's fees should be preliminarily approved. ............................ 25

    2.    The Court should preliminarily approve Plaintiff's Counsel's Costs Reimbursement Request.................................................................................................................... 26

    3.    The Court should preliminarily approve the costs of administration to be paid by the settlement fund............................................................................................................ 27

    4.    The Service Award for Named Plaintiff should preliminarily be approved.............. 28

III.    CONCLUSION.......................................................................................................... 29

# TABLE OF AUTHORITIES

**CASES**

*Alpern v. UtiliCorp United*,
   84 F.3d 1525 (8th Cir. 1996) ............................................................... 17

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)................................................................. 14, 15

*Amchem*,
   512 U.S. 625 ........................................................................... 19

*Antitrust Litig.*,
   2013 U.S. Dist. LEXIS 180530 (N.D. Cal. Oct. 30, 2013).................................. 27

*Avritt v. Reliastar Life Ins. Co.*,
   615 F.3d 1023 (8th Cir. 2010) ......................................................... 15, 16

*Baby Neal v. Casey*,
   43 F.3d 48 (3d Cir. 1994)................................................................. 15

*Baouch v. Werner Enterprises, Inc.*,
   2014 WL 1884000 (D. Neb. 2014) ......................................................... 19

*Blades v. Monsanto Co.*,
   400 F.3d 562 (8th Cir. 2005) ......................................................... 16, 16

*Boyd v. Ozark Air Lines, Inc.*,
   568 F.2d 50 (8th Cir. 1977) ............................................................. 14

*Bredbenner v. Liberty Travel, Inc.*,
   2011 U.S. Dist. LEXIS 38663 (D. NJ. Apr. 8, 2011) ....................................... 28

*Browne v. P.A.M. Transp., Inc.*,
   2019 WL 333569 (W.D. Ark. 2019)......................................................... 19

*Browne v. P.A.M. Transp., Inc.*,
   2020 WL 4430991 (W.D. Ark. July 31, 2020)............................................... 18

*Butler v. Sears, Roebuck & Co.*,
   727 F.3d 796 (7th Cir. 2013) ........................................................... 16

*Camp v. Progressive Corp.*,
   2004 U.S. Dist. LEXIS 19172 (E.D. La. Sept. 23, 2004).................................... 28

*Caroline C. By and Through Carter v. Johnson,*
  174 F.R.D. 452 (D. Neb. 1996)...................................................................... 14

*Churchill Village, LLC v. Gen. Elec. Co.,*
  361 F.3d 566 (9th Cir. 2004) ......................................................................... 5

*Combs v. TruGreen Ltd. P'ship,*
  2010 WL 11636094 (S.D. Ohio 2010)......................................................... 17

*Comcast v. Behrend,*
  133 S. Ct. 1426 (2013).................................................................................. 16

*D'Amato v. Deutsche Bank,*
  236 F.3d 78 (2d Cir. 2001)........................................................................... 11

*Del Toro v. Centene Management Company, LLC,*
  2021 WL 1784368 (E.D. Mo. May 5, 2021) .......................................... 26, 26

*Ehrheart v. Verizon Wireless,*
  609 F.3d 590 (3d Cir. 2010).......................................................................... 11

*Eisenberg v. Gagnon,*
  766 F.3d 770 (3d Cir. 1985).......................................................................... 15

*Emanuel v. Marsh,*
  828 F.2d 438 (8th Cir. 1987) ........................................................................ 14

*Estate of Mahoney v. R.J. Reynolds Tobacco Co.,*
  204 F.R.D. 150 (S.D. Iowa 2001) ................................................................. 14

*General Telephone Co. of Southwest v. Falcon,*
  457 U.S. 147 (1982)...................................................................................... 19

*Gilmore v. Preferred Credit Corp.,*
  2012 U.S. Dist. LEXIS 94510 (W.D. Mo. 2012).......................................... 20

*Glazer v. Whirlpool Corp.,*
  722 F.3d 838 (6th Cir. 2013) ........................................................................ 16

*Granada Invs., Inc. v. DWG Corp.,*
  962 F.2d 1203 (6th Cir. 1992) ...................................................................... 11

*Halvorson v. Auto-Owners Ins. Co.,*
  718 F.3d 773 (8th Cir. 2013) ........................................................................ 16

*Huyer v. Buckley*,
   849 F.3d 395 (8th Cir. 2017) ......................................................................... 26

*In re Aetna Inc. Sec. Litig., MDL*,
   No. 1219, 2001 U.S. Dist. LEXIS 68 (2001).................................................. 26

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000)...................................................... 11, 12

*In re Auto. Refinishing Paint Antitrust Litig., MDL*,
   No. 1426, 2004 U.S. Dist. LEXIS 29162 (E.D. Pa. Oct. 13, 2004)................... 26

*In re Catfish Antitrust Litigation*,
   826 F. Supp. 1019 (N.D. Miss. 1993).......................................................... 18

*In re Cincinnati Policing*,
   209 F.R.D. 395 (S.D. Ohio 2002) ............................................................... 22

*In re Deepwater Horizon*,
   739 F.3d 790 (5th Cir. 2014) ..................................................................... 16

*In re Fasteners Antitrust Litig.*,
   2014 U.S. Dist. LEXIS 9990; 2014 WL 296954 (2014) .................................. 26

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995).................................................................. 10, 13

*In re Traffic Executive Ass'n*,
   627 F.2d 631 (2d Cir. 1980)......................................................................... 5

*In re U.S. Bancorp Litig.*,
   291 F.3d 1038 ........................................................................................ 26

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004)......................................................................... 4

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
   2004 U.S. Dist. LEXIS 23342 (W.D. Mo. Apr. 20, 2004) ................................. 4

*In re Workers' Compensation*,
   130 F.R.D. 99 (D. Minn. 1990)................................................................... 16

*King v. My Online Neighborhood*,
   2007 U.S. Dist. LEXIS 16133 (M.D. Fla. Mar. 7, 2007)................................. 21

*Levya v. Medline Indus.*,
   716 F.3d 510 (9th Cir. 2013) .......................................................................... 5, 17

*Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist.*,
   No. 1, 921 F.2d 1371 (8th Cir. 1990) ..................................................................... 4

*Lynn's Food Stores, Inc. v. United States*,
   679 F.2d 1350 (11th Cir. 1982) ............................................................................ 21

*Maywalt v. Parker & Parsley Petroleum Co.*,
   67 F.3d 1072 (2d Cir. 1998) ................................................................................. 5

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ................................................................................ 5

*Ortega v. Uponor, Inc. (In re Uponor, Inc.)*,
   716 F.3d 1057 (8th Cir. 2013) .............................................................................. 4

*Petrovic v. AMOCO Oil Co.*,
   200 F.3d 1140 (8th Cir. 1999) .............................................................................. 4

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015) ................................................................................. 16

*Salinas v. U.S. Xpress Enterprises, Inc.*,
   2018 WL 1477127 (E.D. Tenn. Mar. 8, 2018) ........................................................ 19, 25

*Sheick v. Auto. Component Carrier LLC*,
   2010 U.S. Dist. LEXIS 110411 (E.D. Mich. Oct. 18, 2010) ............................................. 22

*Smith v. Bayer Corp. (In re Baycol Prods. Litig.)*,
   593 F.3d 716 (8th Cir. 2010) ................................................................................. 19

*Speed Shore Corp. v. Denda*,
   605 F.2d 469 (9th Cir. 1979) ................................................................................. 5

*Tyco Labs, Inc. v. Kimball*,
   444 F. Supp. 292 (E.D. Pa. 1977) .......................................................................... 19

*United States Fid. & Guar. Co. v. Lord*,
   585 F.2d 860 (8th Cir. 1978) ................................................................................. 14

*Van Horn v. Trickey*,
   840 F.2d 604 (8th Cir. 1988) ................................................................................. 10

*Vassalle v. Midland Funding, LLC*,
  No. 11 Civ. 96, 2014 WL 5162380 (N.D. Ohio 2014) ........................................ 11

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ............................................................................................ 15

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) ....................................................................................... 4

*Wetzel v. Liberty Mut. Ins. Co.*,
  508 F.2d 239 (3d Cir. 1975) ..................................................................................... 18

*White v. NFL*,
  836 F. Supp. 1458 (D. Minn. 1993) ......................................................................... 5

*Zinberg v. Washington Bancorp, Inc.*,
  1385 F.R.D. 397 (D.N.J. 1990) ................................................................................ 17

## STATUTES

18 U.S.C.
  § 1961 ........................................................................................................................ 9
  § 1962 ........................................................................................................................ 8

Arkansas
  Ark. Code Ann. 11.4.22 ............................................................................................ 7

## REGULATIONS

29 C.F.R.
  § 11 ...................................................................................................................... 7, 8
  § 785.22 ..................................................................................................................... 7

## FEDERAL RULES

Federal Rules of Civil Procedure
  Rule 23 .............................................................................................................. *passim*

## I.        INTRODUCTION AND FACTUAL BACKGROUND

Subject to this Court's approval, the Parties have reached a class-wide settlement of this action wherein Defendant P.A.M. Transport, Inc. (hereinafter "Defendant" or "PAM") will pay $4,750,000 to settle all claims in this action. Additionally, PAM has agreed that it will modify certain payroll and employee advance policies such that employees will no longer be subject to deductions for escrow accounts, and will no longer be charged any amounts for requesting an advance on wages.

The Settlement[1] will resolve claims of putative class members, that incurred between January 1, 2020 and July 31, 2022, alleging that: (1) PAM failed to pay its over-the-road employee drivers at least the minimum wage for all hours worked under both state and federal law; (2) PAM made unlawful deductions from drivers' wages through the use of an "escrow" account; and (3) PAM charged usurious interest rates on employee advances and recovered such amounts, including usurious interest rates, in violation of state and federal law, including RICO and the Electronic Funds Transfer Act (the "Litigation").

Named Plaintiff Lee Vasquez ("Plaintiff") filed the Litigation on August 6, 2021, and PAM filed its Answer on October 18, 2021. Following a stay granted at the Parties' request and a failed mediation that took place on January 14, 2022, the Parties engaged in extensive discovery on the issues of conditional certification of the collective action and the enforceability of the collective and class action waiver. On March 30, 2022, PAM filed a Motion to Enforce Class Action Waiver (Doc. 25). Following the close of briefing with respect to said motion, the Parties revisited

---

[1] Unless otherwise indicated, all capitalized terms have the definitions set forth in the Settlement and Release Agreement attached to the Declaration of Justin L. Swidler, Esq. ("Swidler Decl.") being filed herewith.  To the extent any term herein conflicts with the Settlement Agreement, the terms of the Settlement Agreement will control.

settlement and reached the Settlement presently before this Court for preliminary approval. On July 18, 2022, the Parties stipulated to the conditional certification contingent on Plaintiff's prevailing on Defendant's pending motion to Enforce Class Waiver, a motion which remains outstanding and, as discussed herein, presents a significant risk to Plaintiff and the putative class should settlement be denied. (DOC 48). If granted final approval, the Settlement will provide a significant recovery on the released claims to approximately 7,965 truck drivers.

This action seeks damages on behalf of PAM's over-the-road truck drivers for alleged violations of Arkansas and federal law from the time period beginning January 1, 2020; the settlement resolves such claims through the end of last month, July 31, 2022. As the Court is aware, this case follows a previous case, *Browne, et al. v. PAM Transport, Inc.,* 5:16-cv-5366-TLB (W.D. Ark.) and seeks similar relief, albeit it under different circumstances (as a result of PAM's modifications of its policies which occurred prior to the start of the class period) and under a different legal framework, following Arkansas's amending its state wage and hour statutes as discussed in detail below.

Prior to reaching a settlement, the Parties have engaged in significant discovery. Plaintiff's Counsel have analyzed and evaluated the merits of the claims in this action, conducted interviews with class and collective members, obtained and reviewed documents relating to Defendant's compensation policies and practices, analyzed payroll data, hours of service data (time records), Qualcomm data, and HOS log data, messaging data, GPS data, Comdata records (regarding employee advances), and have exchanged significant information regarding PAM's current policies and its modifications of such policies. Based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of litigation, including the possibility that the Litigation, if not settled now, might result in a recovery less favorable than the Settlement, that

any potential recovery would not occur for several years, that Defendant would certainly appeal any adverse decision, Plaintiff's Counsel are satisfied that the terms and conditions of the Settlement are fair, reasonable, and adequate and that the Settlement is in the best interests of the class and collective members.

The Settlement provides that PAM will pay the Gross Settlement Amount of $4,750,000 to settle the Litigation. In exchange, PAM will receive a receive a class-wide release for the claims at issue in the lawsuit that class members incurred between January 1, 2020 – July 31, 2022, a period of just over two-and-half years. PAM has also confirmed that while the Litigation was pending, it (1) stopped charging service fees for wage advances; and (2) ended its policies with respect to requiring its drivers fund escrow accounts through wage deductions. As part of this Settlement, PAM states it has no intention to reinstituting such policies at any time in the future, and agrees that it will not reinstitute such policies in the next five years.

The money paid by PAM will fully benefit the class. There is no "claims made" mechanism or similar procedure requiring class members to take action to receive payment; rather every class member who does not opt out will be issued a check from the Qualified Settlement Fund. There also is no reversion. The Settlement Administrator and Plaintiff's Counsel will make every reasonable effort to ensure every check is cashed; what remains will be redistributed to class members until such redistributions are no longer economically feasible; what remains will be donated to the St. Christopher's Fund, a 501(c)(3) charity, which provides money to financially distressed truck drivers who are unable to pay bills.[2] Every class member who does not opt out of the Settlement will be releasing all wage and hour claims they have against PAM as set forth in

---

[2] Neither Plaintiff, Defendant, nor any counsel in this action have any affiliation with the St. Christopher's Fund.    More information regarding the Fund can be found at: https://truckersfund.org.

3

the Settlement Agreement incurred during the Class Period, *i.e.*, from January 1, 2020 to July 31, 2022.

Accordingly, Plaintiff makes this unopposed motion for: (1) preliminary approval of the Settlement with respect to the FLSA claims and Rule 23 class claims; (2) provisional certification of the Rule 23 class action; (3) approval of the Settlement Notice; (4) preliminary approval of Plaintiff's Counsel's attorney's fees and costs and appointment of Plaintiff's Counsel to serve as Class Counsel; (5) appointment of a Settlement Administrator and payment of related costs by the Settlement Fund; and (6) preliminarily approval of the Service Award.

## II.     LEGAL ARGUMENT

### A.     Preliminary Approval is Appropriate.

The law favors compromise and settlement of collective and class action suits. *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371, 1388 (8th Cir. 1990) (in a class action context, providing that "[a] strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor"); *Ortega v. Uponor, Inc. (In re Uponor, Inc.)*, 716 F.3d 1057, 1063 (8th Cir. 2013) (in a class action context, providing that "[a] settlement agreement is presumptively valid."); *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("Although a trial court must consider the terms of a class action settlement to the extent necessary to protect the interests of the class, judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel."); *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 2004 U.S. Dist. LEXIS 23342, 24 (W.D. Mo. Apr. 20, 2004) (noting in the class action context that "the law strongly favors settlements and the courts should hospitably receive them"); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged"); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d

Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotations omitted); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation."); *Speed Shore Corp. v. Denda*, 605 F.2d 469, 473 (9th Cir. 1979) ("It is well recognized that settlement agreements are judicially favored as a matter of sound public policy. Settlement agreements conserve judicial time and limit expensive litigation."); *Newberg On Class Actions* § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

The approval of a proposed class action settlement is a matter of discretion for the trial court. *In re Uponor, Inc.*, 716 F.3d at 1063, 1065; *Churchill Village, LLC v. Gen. Elec. Co.*, 361 F.3d 566, 575 (9th Cir. 2004); *Maywalt v. Parker & Parsley Petroleum Co*., 67 F.3d 1072, 1079 (2d Cir. 1998). In exercising this discretion, courts must determine whether the class action settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *In re Uponor Inc.*, 716 F.3d at 1063.

Preliminary approval, which is sought here, requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *Newberg* § 11.25. The standard at preliminary approval is whether the settlement falls "within the range of possible approval and whether the proposed notice and method by which notice would be given [satisfies] the requirements of due process." *White v. NFL*, 836 F. Supp. 1458, 1466 (D. Minn. 1993). To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980); NEWBERG § 11.25 ("If the preliminary evaluation of the proposed settlement does not

disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members).

The above standards are easily met here. As detailed above, the Settlement was reached after substantial discovery and adversarial litigation after a failed mediation. The Parties, having fully evaluated the risks and rewards of trial and appeal, agreed to the terms of the Settlement.

### B.     The Settlement Falls within the Range of Possible Approval.

The Settlement provides that PAM will pay the Gross Settlement Amount of $4,750,000 to settle the Litigation. PAM also has agreed to change some of its challenged practices, providing further benefit to the class.

In exchange, Plaintiff and Eligible Settlement Class Members who do not opt-out will release all claims brought in the Litigation, including the allegations that: (1) PAM failed to pay its over-the-road employee drivers at least minimum wage for all hours worked; (2) PAM made unlawful deductions from drivers' wages through the use of an "escrow" account; and (3) PAM charged usurious interest rates on employee advances, for the Class Period of January 1, 2020 through July 31, 2022 (but not including any time period class members were designated as an "independent contractor"). During the Class Period, the federal minimum wage was $7.25 per hour, and the state minimum wage ranged from $10.00 to $11.00 per hour.

Plaintiff's primary allegation is that PAM violated federal and state minimum wage laws by failing to compensate drivers at least minimum wage for all hours worked each workweek. PAM modified its policies as a result of the *Browne* action, which though Plaintiff argues does not fully comply with the law, would result in significantly less violations than its previous practices, in the event the Court agreed that Plaintiff was correct.

Among other things, PAM changed the timing of wage payments to its drivers. Furthermore, PAM instituted a minimum wage cross check which, when a driver is paid each

6

workweek, reviews the number of "on duty" and "driving" hours multiplied by Arkansas's minimum wage (which is substantially higher than its federal counterpart), and where a driver would otherwise earn less than minimum, PAM supplements the difference. Though Plaintiff has asserted that PAM was required to pay minimum wage for hours (beyond 8 per day) an over-the-road truck driver was on a multi-day tour with PAM and logged in a truck's sleeper berth, *see* 29 C.F.R. § 785.22, Arkansas amended its state law last summer which directly affects the valuation of the claims before the Court.

Specifically, Ark. Code Ann. § 11-4-22 was amended on July 29, 2021. That amendment provides that motor carriers are relieved of liability for periods of time where the driver is logged as "'off duty' or 'sleeper berth.'" Ark. Code. Ann. § 11-4-22(a)(3)(C). However, the exemption does not apply where the employer's custom or practice, at the time the driver logged such time, was to compensate the employee for such time. Ark. Code. Ann. § 11-4-22(b)(2). The Parties have disputed whether the amendment is retroactive.

Beyond the question of whether the statute is retroactive, Plaintiff has argued that because PAM compensates team drivers for all miles their truck is driven, including miles where a teammate is the active driver and the other driver is in the sleeper berth, PAM did have a custom to compensate for sleeper berth time (at least while inside a moving truck), and the exemption therefore would not fully cover PAM's conduct. Moreover, if this case is litigated, Plaintiff intended to argue that the amendment of the state law was preempted by federal law, as it creates an actual conflict with compliance with federal law, because, as discussed below, such time *is* compensable under the FLSA, and while the FLSA requires a lower rate of pay per hour than Arkansas, the Arkansas law provides a benefit to trucking employers *only* by virtue of their refusal

to compensate sleeper berth time at a rate below what the FLSA requires. Such arguments have not been tested in any court.

As to the FLSA claims, the question of whether PAM was required to compensate drivers for off duty and sleeper berth periods is a mixed question of law and fact. In *Browne*, this Court denied summary judgment to both parties on the issue; the case settled on the day before the jury trial was to begin. Importantly, because PAM has modified its policies to compensate drivers for 'on duty' and 'driving' time at a rate not less than Arkansas's *higher* minimum wage (previously, PAM only paid drivers per mile and did not cross-check its wages against minimum wage requirements), and because the FLSA is only violated when the total compensation provided in a workweek *averages* less than minimum wage for all hours worked, PAM's exposure on FLSA minimum wage was limited.

Finally, as the Court is aware, Plaintiff and the entire putative class and collective face a significant risk because PAM has sought to enforce class waivers which, while Plaintiff does not believe are ultimately enforceable, again exposes the class to significant risk which would reduce or eliminate recovery.

Assuming Plaintiff prevailed on each of the issues discussed above, Plaintiff estimated that the class could recover approximately $2 million on their FLSA claims and $8.6 million on their Arkansas minimum wage claims.

Similarly, Plaintiff claimed that PAM provided $4.1 million in employee advances during the class period which were subject to charges which Plaintiff alleged amount to charging usurious interest rates pursuant to Ark. Code. Ann. § 11-4-402(a); the recovery of which was alleged to violate RICO, 18 U.S.C. § 1962 and the Electronic Funds Transfer Act. Specifically, Plaintiff alleged that PAM's conduct in deducting for wage advances which included charges that amount

8

to more than 10% APR violated RICO because it constitutes collecting "unlawful debt," which is defined as debt which is "unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury." 18 U.S.C. § 1961(6).

PAM defended such claims arguing that it stopped charging fees for wage advances (as was alleged in the *Browne* action, and where it was undisputed PAM charged $10 per personal advance of less than $100 which was repaid a week later in the form of wage deduction), and instead was simply passing through the cost (which was typically $1-$2) for providing the advance charged by Comdata for use of its Comdata card. Though Plaintiff disputes that PAM's reason for charging the amount renders its conduct legal, Plaintiff recognizes whether an employer may charge an employee for the cost it incurs in providing an advance, rather than a set fee to which it receives a profit, was not resolved in *Browne* and remains subject to dispute. Nevertheless, as outlined in the Settlement Agreement, PAM has agreed in this Settlement to stop charging fees and costs to employees when providing advances.

In light of the above risks, a settlement which provides payment to class members today, without delay and without subjecting Plaintiffs to risk of a lesser or no payment, is reasonable.

Given the substantial risks involved with continuing with the Litigation through trial and a likely appeal, the Gross Settlement Amount ($4,750,000) falls within the range of reasonableness and justifies preliminary approval by this Court.

### C.     The Settlement Notice is Proper.

The Settlement Notice is attached as Exhibit A to the Settlement Agreement, which Agreement is attached to the Swidler Declaration as Exhibit 1. Because all class members are identifiable by Defendant's records, and because Defendant maintains address information for each class member, the Parties intend to send the Settlement Notice via U.S. Mail as well as e-mail where available.

The Settlement Notice fully explains the Litigation, the Settlement, the deadlines pertaining to the Settlement, the release, the class representative, Plaintiff's Counsel, opt-out and objection procedures, the settlement allocation, and the requests for attorneys' fees and costs reimbursement, and a service award for the Named Plaintiff.

The Settlement Notice amply complies with due process and warrants approval for distribution to the Eligible Settlement Class Members.

**D.** **The Court Preliminarily Should Approve the Settlement of Plaintiff's Arkansas State Law Claims Under Fed. R. Civ. P. 23 Because It is Fair, Reasonable, and Adequate.**

Although the Court's task on a motion for preliminary approval is focused on ensuring the settlement at issue falls with the realm of reasonableness and the related notice is not procedurally deficient, it is useful for the Court to consider the criteria on which it will ultimately judge the Settlement. Rule 23(e) of the Federal Rules of Civil Procedure requires that cases brought as class actions may only be settled, compromised, or dismissed upon a court finding that it is "fair, reasonable and adequate." Fed. R. Civ. P. 23(e). Rule 23 requires courts to independently and objectively analyze the evidence and circumstances before it to determine whether the settlement is in the best interest of those whose claims will be extinguished. *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995).

In evaluating a class action settlement, courts in the Eighth Circuit generally consider the factors set forth in *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988), which include determining: (1) the merits of the plaintiffs' case weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement. While the fourth *Van Horn* factor cannot be analyzed until the Fairness Hearing, after all class members have been provided notice and an opportunity

to object, the first three factors can be analyzed now and all support the preliminary approval of the proposed Settlement.

By reaching a favorable settlement prior to class certification motion practice, class-wide discovery, trial, or appeal, the Parties will avoid significant expense and delay, and instead ensure recovery for the class. *Ehrheart v. Verizon Wireless*, 609 F.3d at 590, 594-95 (3d Cir. 2010) ("[T]he parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial."); *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ("Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them.").

### 1.   The Merits of Plaintiff's Claims and the Legal and Factual Complexity of the Claims (Factors 1 and 3).

The Litigation involves unpaid minimum wage claims, unlawful wage deduction claims, and wage advance claims for a class of approximately 7,965 over-the-road truck drivers assigned to different loads and routes throughout their employment. The law regarding the compensability of certain rest time for over-the-road drivers continues to develop. Though Plaintiff remains confident in her legal position, no appellate court has ruled directly on the issues before the Court, making the Litigation inherently risky for the class.

Despite Plaintiff's belief in the strength of the class claims, she recognizes the class would face legal and procedural hurdles to establish class-wide liability and damages. As a general matter, "complex litigation is 'notoriously difficult and unpredictable.'" *Vassalle v. Midland Funding, LLC*, No. 11 Civ. 96, 2014 WL 5162380, at *6 (N.D. Ohio 2014) (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)); *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236

F.3d 78 (2d Cir. 2001) ("Most class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them."). Named Plaintiff recognizes the possibility that, if not settled now, the case could result in a recovery far less favorable to the Putative Class Members—or none at all. Plaintiff is also aware that, if the action continued, any recovery for the Putative Class Members may not occur for several years.

Accordingly, the legal issues involved in the Litigation make the Litigation an ideal candidate for settlement. Hence, these factors (Factors 1 and 3) weigh in favor of approval of the Settlement.

### 2.    The Defendant's Financial Condition (Factor 2).

Defendant's ability to pay had no impact on settlement discussions. Although this factor may be relevant when a defendant obtains a discount because of legitimate concerns that the employer cannot pay more than provided, here no such discount was provided. For this reason, PAM's financial condition should not be a determining factor. Although PAM could, as a financial matter, likely pay a greater judgment, its ability to do so, "standing alone, does not suggest that the settlement is unfair." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 178 n.9 (S.D.N.Y. 2000).

Thus, this factor is not material to the Court's consideration of the fairness of the Settlement.

### E.    Provisional Certification of the Rule 23 Classes for Settlement Purposes Only is Appropriate.[3]

Plaintiff further seeks this Court to provisionally certify a class, for settlement purposes only, for her claims under Arkansas and federal law. The proposed Rule 23 class consists of

---

[3] Conditional or provisional class certification is appropriate at the preliminary-approval stage where, as here, the proposed classes have not previously been certified, and Plaintiff and Plaintiff's

individuals who worked for Defendant as an over-the-road truck driver from January 1, 2020 to July 31, 2022.

As discussed below, Plaintiff asserts that all of the certification requirements for settlement purposes are met for this proposed settlement class. Provisional settlement class certification and appointment of class counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all class members of the terms of the proposed settlement, and setting the date and time of the final approval hearing. *See In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995).

To meet the prerequisites of Rule 23, Plaintiff must first establish that the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy—have been met and then that the pleading requirements of Rule 23(b)(1), (2), or (3) have been met. *See* Fed. R. Civ. P. 23.

Rule 23(b)(3) requires a plaintiff to establish "that the questions of law or fact common to the class members predominate over any questions affecting only individual members [(predominance)], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [(superiority)]." Fed. R. Civ. P. 23(b)(3).

---

counsel create a substantial record supporting the propriety of class certification. *See* Newberg on Class Actions § 11.22 (4th ed. 2002). The practical purpose of provisional class certification is to facilitate dissemination of notice to the class of the terms of the proposed settlement and the date and time of the final approval hearing. *See id.,* § 11.27. However, as this is a provisional settlement-only class, Defendant retains and reserves the right to dispute the issues surrounding final certification of certification of a Rule 23 class action if the Court does not approve the settlement.

**1.      The class satisfies each prerequisite for certification under Rule 23(a) and Rule 23(b)(3).**

Fed. R. Civ. P. 23 imposes four threshold requirements for class certification: (1) the class is so numerous that joinder is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy"). Plaintiff bears the burden of establishing that the proposed class meets each requirement of Rule 23(a) and must do so by a preponderance of the evidence. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997).

**2.      The members of the class are sufficiently numerous that joinder is impracticable.**

The first prerequisite Plaintiff must meet under Rule 23(a) is numerosity. *Amchem*, 521 U.S. at 613. Rule 23(a) requires "the class be so numerous that joinder of all members is impracticable." *See* Fed. R. Civ. P. 23(a)(1). The rule "requires only the impracticality, not the impossibility, of joinder." *United States Fid. & Guar. Co. v. Lord*, 585 F.2d 860, 870 (8th Cir. 1978). The plaintiffs need only show "that joining all members of the class would be difficult." *Caroline C. By and Through Carter v. Johnson*, 174 F.R.D. 452, 462 (D. Neb. 1996) (citations omitted) (stating "as few as 40 class members should raise a presumption that joinder is impracticable"). "The Eighth Circuit has not established strict requirements regarding the size of a proposed class[.]" *Estate of Mahoney v. R.J. Reynolds Tobacco Co.*, 204 F.R.D. 150, 153 (S.D. Iowa 2001) (*citing Emanuel v. Marsh*, 828 F.2d 438, 444 (8th Cir. 1987)); *Boyd v. Ozark Air Lines, Inc*., 568 F.2d 50, 54 (8th Cir. 1977)).

In the instant matter, the proposed class easily meets this requirement. The proposed class has approximately 7,965 putative class members. *See* Swidler Decl. ¶ 17. Accordingly, numerosity has been established for each proposed class.

> **3.    There are questions of law and fact common to the members of the class and these facts predominate over individual issues.**

To certify a class under Rule 23(a), there must exist questions of law and fact common to the members of class. To certify a proposed class under Rule 23(b)(3), plaintiffs must establish that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Because both requirements deal with the same subject matter, Rule 23(a)'s "commonality" requirement is subsumed under the more stringent Rule 23(b)(3) requirement that questions common to the class "predominate over" other questions. *Amchem*, 521 U.S. at 609.

The commonality requirement "requires the plaintiff to demonstrate that the class members have suffered the same injury" because of a common issue or fact. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994) ("Because the [commonality] requirement may be satisfied by a single common issue, it is easily met …."). Rather than impose an exacting standard that acts as an exact identity between the individual claims, the commonality requirement merely asks whether the proposed class is seeking redress from a common legal injury. *Wal-Mart Stores, Inc.*, 131 S. Ct. at 2551; *Eisenberg v. Gagnon*, 766 F.3d 770, 786 (3d Cir. 1985).

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Avritt v. Reliastar Life Ins. Co*., 615 F.3d 1023, 1029 (8th Cir. 2010) (*quoting Amchem*, 521 U.S. at 623). At the core of Rule 23(b)(3)'s predominance requirement is the issue of whether the defendant's liability to all plaintiffs may be

established with common evidence. *See Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005). "If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." *Avritt*, 615 F.3d at 1029 (*quoting Blades*, 400 F.3d at 566); *Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773, 778 (8th Cir. 2013)).

However, the existence of some individual issues will not preclude a finding of predominance as long as the central issues can be adjudicated on a class-wide basis. *In re Workers' Compensation*, 130 F.R.D. 99, 108 (D. Minn. 1990). For instance, differences in damages and the need to prove individual damages are not sufficient to preclude a finding of predominance. *Comcast v. Behrend*, 133 S. Ct. 1426, 1436 (2013) (dissenting) (stating in dissent that *Comcast* "should not be read to require, as a prerequisite for certification, that damages attributable to a class wide injury be measurable on a class wide basis"). Moreover, all Circuits that have taken up the issue are in accord with the dissent on this issue. *See Roach v. T.L. Cannon Corp.*, 778 F.3d 401 (2d Cir. 2015) ("*Comcast*, then, did not hold that a class cannot be certified under Rule 23(b)(3) simply because damages cannot be measured on a classwide basis …." *Comcast* "did not foreclose the possibility of class certification under Rule 23(b)(3) in cases involving individualized damages calculations."); *In re Deepwater Horizon*, 739 F.3d 790, 815 (5th Cir. 2014) ("nothing in *Comcast* mandates a formula for class-wide measurement of damages …. [*Comcast*] has no impact on cases such as the present one, in which predominance was not based on common issues of damages but on the numerous common issues of liability"); *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013), *cert denied* 134 S. Ct. 1277 (2014) (class certification does not require damages to be determined on class-wide basis); *Glazer v. Whirlpool Corp.*, 722 F.3d 838

(6th Cir. 2013) (court may certify liability-only class); *Levya v. Medline Indus.*, 716 F.3d 510, 513-514 (9th Cir. 2013) (individualized damage inquiries in wage and hour case does not require decertification).

Here, the central factual and legal questions—whether PAM failed to pay its over-the-road employee drivers at least the minimum wage for all hours worked; (2) whether PAM made unlawful deductions from drivers' wages through the use of an "escrow" account; and (3) whether PAM charged usurious interest rates on employee advances, for the Class Period of January 1, 2020 through July 31, 2022—are common, and can be proven with common evidence and legal arguments. *See, e.g., Combs v. TruGreen Ltd. P'ship*, 2010 WL 11636094, at *3 (S.D. Ohio 2010) (concluding, whether defendants engaged in improper pay practices "predominates over any questions affecting individual Class Members"). Thus, common issues predominate. Accordingly, this requirement is met.

### 4.    Plaintiff's claims are typical of the claims of the class.

Typicality under Rule 23(a)(3) means that there are "other members of the class who have the same or similar grievances as the plaintiff." *Alpern v. UtiliCorp United*, 84 F.3d 1525, 1540 (8th Cir. 1996). "The burden is fairly easily met so long as other class members have claims similar to the named plaintiff. Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Id.* (internal citations removed).

Thus, the focus of the typicality inquiry is not on the individual named plaintiff's behavior, but rather on the acts of the defendant. A plaintiff will satisfy the typicality prong if he or she was injured by the defendant's conduct in the same manner as the other members of the proposed class. *Zinberg v. Washington Bancorp, Inc.*, 1385 F.R.D. 397, 407 (D.N.J. 1990). "Furthermore, in instances where it is alleged that the defendants engaged in a common scheme relative to all

members of the class, there is a strong assumption that the claims of the representative parties will be typical of the absent class members." *In re Catfish Antitrust Litigation*, 826 F. Supp. 1019, 1035 (N.D. Miss. 1993) (*citing Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985)).

Here, Plaintiff claims are typical of the claims of the putative class because she alleges the same type of injury that all other putative class members allegedly suffered as a result of Defendant's alleged conduct. Specifically, Plaintiff contends that: (1) PAM failed to pay its over-the-road employee drivers at least the minimum wage for all hours worked; (2) PAM made unlawful deductions from drivers' wages through the use of an "escrow" account; and (3) PAM charged usurious interest rates on employee advances, for the Class Period of January 1, 2020 through July 31, 2022. Hence, Plaintiff's claims are typical of the claims of the putative members of the proposed class she seeks to represent.

**5.    Plaintiff's Counsel and Plaintiff are adequate to protect the class; Plaintiff's Counsel should be appointed Class Counsel.**

Courts look to two elements to assess the adequacy of class representation under Rule 23(a)(4): "(a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the plaintiff must not have interests antagonistic to those of the class." *Wetzel v. Liberty Mut. Ins. Co*., 508 F.2d 239, 247 (3d Cir. 1975).

The first element of the adequacy test is satisfied here because Plaintiff's Counsel has substantial experience litigating complex wage and hour actions, including class actions and certified collective actions with tens of thousands of class members. *See* Swidler Declaration at ¶¶ 11-12. Courts around the country have recognized Swartz Swidler as being particularly skilled in the area of the collective and/or class action wage-and-hour litigation. *See, e.g., Browne v. P.A.M. Transp., Inc.*, 2020 WL 4430991, at *2 (W.D. Ark. July 31, 2020) ("The litigation stretched over nearly four years and involved extensive motion practice, voluminous discovery, and numerous

depositions. It presented novel questions of law. [Swartz Swidler] proved themselves to be highly skilled and experienced in this particular area of litigation."); *Salinas v. U.S. Xpress, Inc.*, 2018 WL 1477127, *6 (E.D. Tenn. 2018) ("Plaintiff's counsel has substantial experience litigating complex wage and hour actions, including class actions and certified collective actions with tens of thousands of class members"); Furthermore, courts in the Eighth Circuit have certified Named Plaintiff's counsel in other wage and hour class action cases, wherein they have represented tens of thousands of workers. *See, e.g., Browne v. P.A.M. Transp., Inc.*, 2019 WL 333569 (W.D. Ark. 2019); *Baouch v. Werner Enterprises, Inc.*, 2014 WL 1884000 (D. Neb. 2014). Plaintiff's Counsel requests the Court appointed them to serve as Class Counsel in the Litigation.

The test for the second element is whether the proposed representative has outside entanglements or conflicts that make it likely that the class members' interests will be disregarded. *Tyco Labs, Inc. v. Kimball*, 444 F. Supp. 292, 299 (E.D. Pa. 1977). Ultimately, "the point of the adequacy inquiry is 'to uncover conflicts of interest between named parties and the class they seek to represent.'" *Smith v. Bayer Corp.* (*In re Baycol Prods. Litig.*), 593 F.3d 716 (8th Cir. 2010).

The adequacy-of-representation requirement "tends to merge" with the commonality and typicality criteria of Rule 23(a), which "serve as guideposts for determining whether … maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157, n.13 (1982), *quoted in Amchem*, 512 U.S. at 625-26.

Here, Plaintiff has no conflicts that would prohibit her from working in a class-representative capacity. Moreover, her interests are in complete alignment with class members in this matter.

Accordingly, both Plaintiff's Counsel and Plaintiff are adequate representatives of the proposed classes.

**6.     A class is superior to other available methods of resolving this dispute.**

To certify a class pursuant to Rule 23(b)(3), the Court must also determine that the class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). The Rule identifies the following factors pertinent to such a finding: (1) the interest of individual class members in individually controlling the prosecution of separate actions; (2) the extent and nature of any previously commenced litigation concerning the controversy; (3) the desirability or undesirability of concentrating the litigation of the claims in a single forum; and (4) the difficulties likely to be encountered in the management of a class action. *Id.*

Typically, courts review the potential damages of each class member; in cases where per plaintiff damages are especially high, courts may find that individual interests are too high to justify the efficiency of a Rule 23 class. However, damages need not be minimal in nature for a finding of superiority. *See Gilmore v. Preferred Credit Corp*., 2012 U.S. Dist. LEXIS 94510 (W.D. Mo. 2012) ("While the damages are more than minimal, they are not so high (as might be true in a case involving personal injury and future medical costs) that interest in individual control likely exists.").

Here, the superiority factors weigh heavily in support of approving the settlement class. As to the first factor, the value of each individual's claim, while not insignificant, would neither justify nor motivate most individuals to have an interest in bringing their own individual claims. As to the second factor, Plaintiff's Counsel is not aware of any prior litigation that concerned the Class Period at issue in the Litigation –January 1, 2020 through July 31, 2022. As to the third factor, there is clearly an interest in controlling the Litigation in a single court in Arkansas, because

permitting the claims of the Litigation to resolve in multiple forums risks different and inconsistent outcomes for class members and Defendant. Finally, as this is a proposed settlement-only class, there are no difficulties likely to be encountered in finalizing the resolution of this matter on a class-wide basis. Thus, the settlement class meets the superiority requirement.

Accordingly, this Court should provisionally certify the proposed Rule 23 class for purposes of settlement.

**F.** **The Court Should Provisionally Approve the Settlement of Plaintiff's FLSA Claims Because the Settlement is Fair and Reasonable.**

With respect to a court-authorized settlement of FLSA claims, the court must determine that the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores, Inc. v. United States Dep't. of Labor*, 679 F.2d 1350, 1355 (11th Cir. 1982). If a settlement in an employee FLSA suit reflects "a reasonable compromise over issues," such as FLSA coverage or computation of back wages that are "actually in dispute," the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354.

In determining whether a collective action settlement is fair and reasonable, courts consider: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, risk, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the strength of the plaintiff's case and the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel. *See King v. My Online Neighborhood*, 2007 U.S. Dist. LEXIS 16133, at *7 (M.D. Fla. Mar. 7, 2007) (internal citations omitted). "When considering these factors, the Court should keep in mind the 'strong presumption' in favor of finding a settlement fair." *Id.* (internal citations omitted.)

Moreover, "a settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *Id.* at *3 (internal citations omitted.).

      **1.**      **The settlement is not fraudulent or collusive.**

The settlement was reached following a failed mediation before respected mediator Hunter Hughes. There were no backroom deals, and all terms of the agreement reached between the Parties have been placed before the Court. The Settlement a product of adversarial litigation resulting in significant and meaningful concessions by the Parties.

      **2.**      **The Settlement appropriately factored in the complexity, risk, expense, and likely duration of the trial and appeal.**

While Plaintiff believes her legal position is strong, "[w]hatever the relative merits of the parties' legal positions, there is no risk-free, expense-free litigation." *Sheick v. Auto. Component Carrier LLC*, 2010 U.S. Dist. LEXIS 110411 (E.D. Mich. Oct. 18, 2010); *See also In re Cincinnati Policing*, 209 F.R.D. 395, 400 (S.D. Ohio 2002) ("the trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court. . . . The prospect of such a massive undertaking clearly counsels in favor of settlement.") (internal quotation marks and citations omitted).

Plaintiff and counsel are well aware that despite their belief in the merits of their case, to prevail at trial (and appeal) would require significant risk and delay.

As detailed *supra* in Section B, the Parties dispute nearly every legal issue in this case. Defendant has placed before this Court a motion to enforce a class waiver, a motion which, if it prevails, would significantly impair the ability of class members to recover regardless of the substantive merit to their legal claims. Specifically, for many of these putative class members,

individual litigation is not a reasonable option as their work is not conducive to attending trial and depositions based on a potential—but not guaranteed—financial recovery.

Moreover, if Plaintiff prevailed and this Court determined PAM's class waiver was unenforceable, Plaintiff's claims remain subject to significant dispute. As provided, the FLSA's low minimum wage rate and PAM's attempted compliance with Arkansas's higher rate resulted in the class's FLSA claims, even if they prevail, to be modest. For Plaintiff to recover significantly, she needed to prevail regarding the still untested arguments regarding whether the amendment to the Arkansas Minimum Wage Act was prospective only, and whether PAM's compensation structure significantly limited PAM's ability to take advantage of the amended law.

There are many potential risks to the putative class in litigating to a final judgment. PAM has aggressively challenged Plaintiff's legal and factual claims, many of which are the subject of unsettled law. The litigation risk in this case is exacerbated by the complexity of the legal claims and facts, and the challenges of keeping the classes certified through trial. The settlement will pay drivers now, rather than require drivers to wait for and risk their recovery on the outcome of dispositive motions, a jury trial, and an (almost certain) appeal.

Considering the Parties' relative positions, the benefits of a settlement outweighed the risks of proceeding to trial. As such, the Settlement Agreement should be preliminarily approved.

### 3.    The stage of the proceedings.

The Parties have engaged in class-wide discovery. Plaintiff's Counsel has analyzed and evaluated the merits of the claims in this action, conducted interviews with class and collective members, obtained and reviewed documents relating to Defendant's compensation policies and practices, analyzed payroll data, messaging data, Qualcomm data, and HOS log data, and based

23

upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of litigation, including the possibility that the Litigation, if not settled now, might result in a recovery less favorable than the Settlement, that any potential recovery would not occur for several years, that Defendant would appeal any adverse decision, Plaintiff's Counsel are satisfied that the terms and conditions of the Settlement are fair, reasonable, and adequate and that the Settlement is in the best interests of the class and collective members.

The Parties thoroughly understand the claims at issue and the risks associated with continued litigation, demonstrating the appropriateness of the Settlement.

### 4.   The strength of the plaintiff's case and the probability of plaintiff's success on the merits.

As previously noted, the Litigation involves complex legal issues for a class of approximately 7,965 over-the-road truck drivers. As the Court is aware, the law regarding the compensability of certain rest time for over-the-road drivers continues to develop. Additionally, there remains a dispute whether certain payments provided to class members could be used to offset minimum wage obligations. Though Plaintiff remains confident in her legal position, no appellate court has ruled directly on the issues before the Court, making this action inherently risky for the class.

### 5.   The Settlement covers the range of possible recovery.

Though the settlement does not provide Plaintiffs with their best day in court, it is well within the range of recovery. All of Plaintiff's claims are heavily disputed, and absent a settlement, Plaintiff remains at risk for having their class and collective claims terminated based on alleged class waivers. The payments to Plaintiff and class members thus provide a fair compromise of the value of the claims based on the risks inherent in a trial and an appeal, and the time and expense

necessary to obtain such a result. The Settlement further provides for injunctive relief. The Settlement further accounts for Defendant's financial condition.

### 6. The opinions of Counsel.

Plaintiff's Counsel are particularly experienced in wage and hour collective and class action litigation, and believe that the Settlement is fair and reasonable. Plaintiff's Counsel have analyzed and evaluated the merits of the claims in this action, conducted interviews with class and collective members, obtained and reviewed documents relating to Defendant's compensation policies and practices, analyzed payroll data, messaging data, Qualcomm data, and HOS log data, and based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of litigation, including the possibility that the Litigation, if not settled now, might result in a recovery less favorable than the Settlement, that any potential recovery would not occur for several years, that Defendant would appeal any adverse decision, Plaintiff's Counsel are satisfied that the terms and conditions of the Settlement are fair, reasonable, and adequate and that the Settlement is in the best interests of the class and collective members. *See* Swidler Declar. at 11-12, 15.

### G. The Court should preliminarily approve the Attorneys' Fees, Costs, Service Award, and Administrative Costs.

The Court should also preliminarily approve the requested attorneys' fees, costs, service payments, and administrative costs.

### 1. The requested attorney's fees should be preliminarily approved.

While Plaintiff's counsel will fully provide the factual and legal basis supporting the requested attorney's fees and costs in Plaintiff's motion for final approval, at this stage, preliminary approval of the request is appropriate. The attorneys' fees in the Litigation are requested as a percentage of the class recovery. "The percentage-of-recovery method is the prevailing methodology used by courts for wage-and-hour cases." *Salinas v. U.S. Xpress*

*Enterprises, Inc.*, 2018 WL 1477127, at *8 (E.D. Tenn. Mar. 8, 2018), *report and recommendation adopted,* 1:13-CV-245, 2018 WL 1475610 (E.D. Tenn. Mar. 26, 2018). Courts "in the Eighth Circuit "recognize[] that … 'percentage of the benefit' approach to calculating fees is appropriate so long as the fees are fair and reasonable." *Del Toro v. Centene Management Company, LLC*, 2021 WL 1784368, at *3 (E.D. Mo. May 5, 2021) (citing *In re U.S. Bancorp Litig.*, 291 F.3d at 1038).

The requested percentage-of-the-recovery here—33 1/3% of the Gross Settlement Amount—is in line with other awards ordered in the Eighth Circuit. *See, e.g., Del Toro*, 2021 WL 1784368, at *3 (approving 35%); *Himagine Sols.*, 2021 WL 2634669, at *7 (E.D. Mo. June 25, 2021) (approving 33 1/3%); *In re U.S. Bancorp Litig.*, 291 F.3d at 1038 (affirming award of 36% of a class action settlement fund).

Thus, the Court should preliminarily approve Plaintiff's Counsel's fee request as fair and reasonable, subject to final review and approval at the Final Approval Hearing.

### 2. The Court should preliminarily approve Plaintiff's Counsel's Costs Reimbursement Request.

"There is no reason to reject the request for reimbursement of [expenses] that counsel have spent out of their own pockets in litigating [a class action] case." *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 U.S. Dist. LEXIS 29162, at *35-36 (E.D. Pa. Oct. 13, 2004). Moreover, "attorneys who create a common fund for the benefit of a class are entitled to reimbursement of reasonable litigation expenses from the fund." *In re Aetna Inc. Sec. Litig.*, MDL No. 1219, 2001 U.S. Dist. LEXIS 68, at *40, 2001 WL 20928 (E.D. Pa. Jan. 4, 2001); *see also In re Fasteners Antitrust Litig.*, 2014 U.S. Dist. LEXIS 9990, 2014 WL 296954 (E.D. Pa. Jan. 27, 2014); *see also Huyer v. Buckley*, 849 F.3d 395, 398 (8th Cir. 2017) ("the district court did not

abuse its discretion by basing its fee award on the total settlement fund, which included administrative costs").

Plaintiff's Counsel will submit a full accounting of their costs when Plaintiff files her motion for final approval. As set forth in the Settlement Agreement, the reimbursement amount sought shall not exceed $100,000. *See* Settlement Agreement at 3.2(A), attached to Swidler Declar. as Exhibit 1. The Court should preliminarily approve the costs as fair and reasonable, subject to final review and approval at the Final Approval Hearing.

### 3. The Court should preliminarily approve the costs of administration to be paid by the settlement fund.

The administration of the Settlement will require the engagement of a sophisticated and experienced Settlement Administrator. The Settlement Administrator will send settlement notices, perform the calculations necessary to distribute the Settlement, and provided the Court grants final approval, will hold the fund in trust and issue checks and Forms W-2 and 1099 to all beneficiaries of the Settlement in accordance with the Court's order and the Settlement Agreement.

The Parties have agreed that the Settlement Administrator shall be selected by Plaintiff's Counsel and approved by Defendant, and that the Settlement Fund shall pay the Settlement Administrator all reasonable costs in administrating the Settlement. *See* Settlement Agreement at 1.24 and 3.2(B), attached to Swidler Declar. as Exhibit 1.

The Settlement Agreement provides that the costs of administering the Settlement shall be paid from the Settlement Fund. Where a settlement agreement calls for the costs of administration to be borne by the settlement fund, the Court should approve same. *See, e.g., In re High-Tech Emple. Antitrust Litig.*, 2013 U.S. Dist. LEXIS 180530, *19 (N.D. Cal. Oct. 30, 2013)

("[a]ll costs incurred in disseminating Notice and administering the Settlement shall be paid from the Settlement Fund pursuant to the Settlement Agreement").

Plaintiff thus respectfully requests that the Court order that the Settlement Administrator is to be paid its reasonable fees and costs incurred in furtherance of the effectuating the Settlement out of the Settlement Fund.

### 4. The Service Award for Named Plaintiff should preliminarily be approved.

At the Fairness Hearing, Plaintiff will seek a Service Award of up to $10,000 as a service payment for her efforts expended in bringing and assisting in the Litigation. Plaintiff contacted Plaintiff's counsel to file suit against PAM for the challenged practices, participated in discovery and settlement discussions, and intended to sit for deposition, testify at trial, and be present for the entire trial. And as a result of her efforts, approximately 7,965 drivers will be paid and PAM has altered some of its challenged practices.

"The purpose of [service] payments is to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation, and to reward the public service of contributing to the enforcement of mandatory laws." *Bredbenner v. Liberty Travel, Inc.*, 2011 U.S. Dist. LEXIS 38663, 63-64 (D. NJ. Apr. 8, 2011). By bringing suit against a large company and having documents publicly filed with their names on them, named plaintiffs who assist in class action litigation "[take] on certain risks. By bringing suit against a major company[,]… they risk their good will and job security in the industry for the benefit of the class as a whole." *Id.*; *see also Camp v. Progressive Corp.*, 2004 U.S. Dist. LEXIS 19172 (E.D. La. Sept. 23, 2004) (allowing incentive awards to named plaintiffs and other class members who participated in discovery).

28

The Court should preliminarily approve the requested Service Award for the Named Plaintiff.

## III.    CONCLUSION

For the reasons as stated above, Plaintiff requests that this Honorable Court grant their instant motion and preliminarily approve the collective and class settlement in this matter and schedule a final settlement fairness hearing, or as soon thereafter as the Parties may be heard.

Respectfully submitted,

*/s Justin L. Swidler*
Justin L. Swidler, Esq.
Richard S. Swartz, Esq.
Joshua S. Boyette, Esq.
**SWARTZ SWIDLER, LLC**
9 Tanner Street, Ste 101
Haddonfield, NJ 08033
Phone: (856) 685-7420
Fax: (856) 685-7417